EGGLESTON v. MILWAUKEE HEATER MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. April 23, 1912.)

No. 1,852.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—RELIEF DEVICE FOR WATER SYSTEMS.

The Eggleston patent, No. 838,394, for a relief device for water systems, comprising a pressure and relief attachment which may be used with steam or hot water heating systems, claims 6, 7, and 8 are not for the same subject-matter as that abandoned by the cancellation of original claims 2, 3, and 4, but are a more accurate embodiment of the patentee's conception and cover a new combination of merit and disclose invention; also *held* infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

Suit in equity by Lewis W. Eggleston against the Milwaukee Heater Manufacturing Company. Decree for defendant, and complainant appeals. Reversed.

Appellant, hereinafter called complainant, filed his application for a patent for a relief device for water systems, which was granted December 11, 1906, as patent No. 838,394, after numerous modifications in its way through the Patent Office.

The patent is distinctly for a relief device, and in no manner involves the water system itself, save as a means for regulating it. As originally presented, there were nine claims. Claims 2, 3, and 4, as originally presented, read as follows:

"2. A relief device for a water system, presenting a bowl containing mercury, a tube open below and dipping into said mercury, and means for connecting said bowl with said water system to receive the pressure thereof.

"3. A relief device for a pressure system, comprising a substantially vertical tubular body, a centrally disposed tube arranged within said body and adapted to support a mercury column, and means for making communication from said pressure system to said body.

"4. A relief device of the class described, comprising a substantially vertical tube, an inner tube arranged within the same, and a sealing fluid at the lower extremity of said tubes, the surface whereof may receive a pressure to support a column of said fluid in said tubes."

They call, in substance, for a bowl containing a mercury seal, a vertical tubular body, an inner tube arranged within the tubular body, open below and dipping into the mercury-bowl at its lower extremity, and means for making connection with the water system pressure. These claims the examiner rejected on the German patent, No. 88,332, granted to David Grove on October 23, 1896, for "heating construction blow-off apparatus for steam heating and the like." In this device, when the pressure in the system arrives at a predetermined point, the mercury seal is lifted thereby into an enlarged tube or chamber, into the bottom of which the mercury falls and from an outlet pipe extending from the top of which the steam, air, or water escapes into the atmosphere until the pressure is reduced, whereupon the mercury is returned through a small tube at the bottom of the chamber, to reconstitute the seal. The examiner bases his conclusion upon the statement that it does not involve invention to substitute the Trane form of seal, or that of Reynolds, No. 741,548, for the Grove seal. These two latter are vacuum or low pressure seals designed to effect the release of air or the like from the heating system. Original claim 1, which called for a relief device presenting a mercury column supported by the pressure in the system, means for the escape of water through the column, and an expansion tank there beyond to which the water might escape, was likewise rejected on the Grove patent, the Olney English patent of 1883, and the Purnell British patent, No. 2,391, with the statement that the tank is not a material feature of the device as claimed. Present claim 1 was added February 17, 1906. Original claim 5 as amended, which called for a lower bowl, a horizontally enlarged expansion-head, and a tubular body extending from the bowl to the head and attached to both bowl and head—a claim which, on a fair construction, presents merely the external outline of the device of the patent, was also rejected by the examiner on the Grove patent. Complainant's solicitor, before the examiner, seems to have entirely misunderstood the scope of this claim when he sought to have it construed as an operative device in his argument of September 23, 1905. There can be no doubt, when all the language of the claims and specification are considered, that this claim was clearly defective.

Present claim 2 was substituted for original claim 6 by complainant. Original claim 7 became claim 3. Original claim 8 became claim 4, and original claim 9 is the present claim 5. Claims 6 and 7 were added March 1, 1906, and claims 8 and 9 were added on April 17, 1906—all of the four last named on the suggestion of the examiner. As thus manipulated, the patent issued. On June 15, 1908, complainant instituted this suit for infringement.

Appellees, hereinafter termed defendants, made answer denying validity of the patent in suit and infringement thereof, and setting up a number of patents in the prior art, of which mention need here be made only of Mott and Edgar patent No. 600,440, granted March 8, 1898, for "relief device for hot water heating"; patent No. 686,666 granted to Trane for a "steam heating system"; D. F. Morgan patent No. 722,127, granted March 3, 1903, for a "steam heating plant"; patent No. 741,548, granted to Reynolds, October 13, 1903, for "vacuum heating system"; British letters patent No. 1,705, granted to Olney April 5, 1883, for valves to be used in connection with "hot

water apparatus for heating, etc."; British letters patent granted to Purnell on September 25, 1861, and numbered 2391, for "warming apparatus"; British patent No. 4393, granted October 10, 1881, to Shields for "safety valve for domestic boilers and hot water apparatus"; German patent to Grove, No. 88,332, granted October 23, 1896, for a blow-off apparatus for steam heating and the like. The claims in suit read as follows, viz.:

"6. A pressure and relief attachment for a pressure hot water heating system, comprising a receptacle containing a mercury well, a chamber in communication with said receptacle, a tube extending from said well to the chamber to allow the formation of a mercury column under pressure from the system, the arrangement being such that a predetermined pressure may be maintained in the system, and water may pass from and return to the system through the mercury under sufficient variation from said pressure.

"7. A relief device of the class described comprising a tube to contain a mercury column, means for connecting said tube to a water system whereby the pressure of said system may form and support said column and an extension beyond said tube into which water may escape through said mercury column, and from which the escaped water may return through said mercury column.

"8. In a device of the class described, a mercury-chamber, a boiler connection extending laterally from the mercury-chamber, a bulb supported above the latter, a pipe depending from said bulb into the mercury-chamber, and a tank connection at the upper end of the bulb the parts being so arranged as to allow water to pass and repass through the mercury."

—being those claims inserted at the suggestion of the examiner. Figs. 1 and 2 of the drawings, below set out, sufficiently show the device of the patent:

Fig. 2 shows a device having two tubes, *10* and *13*, in which may be employed two mercury columns. The addition of tube *10* was new with complainant, and is covered by claims not in suit. It supplements tube *13*, aids in the free circulation of the mercury, and results in the attainment of a steadier pressure. The claims in suit, it is contended by complainant, call for only one tube connecting the interior of the two bowls, the lower bowl *6* and upper chamber *5*. When the pressure of the system supplied through the pipe *2* and the chamber *8* causes the fluid surrounding tube *13* and within the tubular body *4* to bear upon the body of mercury contained in receptacle *6*, the latter is forced up tube *13* and, at length into the head *5*. As soon as the nipple *12* is free from the mercury, the fluid rushes into tube *13* and by reason of the system pressure, forces its way through the mercury which by that time is spread out in head *5* so as to create a short column, and escapes beyond the seal in bubbles or otherwise, and thus relieves the pressure of the system. When the latter has been reduced to atmospheric pressure, or less, the mercury passes back into tank *6* and re-forms the seal. In the meantime, the water which has escaped, is held above the seal so that substantially none of it is wasted. Its absence from the system creates something akin to a vacuum, whereupon the atmospheric pressure forces it through the new-found seal, out of nipple *12* and back into the system. The tank *5*, together with the pipe *15*, and expansion tank *16*, are provided with space to hold whatever water escapes. Thus' the same body of mercury forms a seal at tank *6*, then when forced up the tube *13*, forms a new seal in tank *5*, and when the pressure is reduced, returns' and re-forms. the seal at tank *6*.

The patents above recited cover either the provision for the high pressure relief of the patent in suit or the low pressure or the vacuum-controlled return of the water. No one of them covers both processes. Concretely stated, complainant's claim is for a device whereby water may be forced under the system pressure through the seal without serious loss of temperature or pressure in the system, and then be restored to the system when the pressure is reduced, without decrease in volume, all by the use of one body of mercury. In all these heating systems, it is essential that the body of water in the system be maintained substantially intact. Defendants insist that the alleged infringing device is for a different purpose and applicable to a different heating system.

It will be seen that complainant's water is in immediate contact with the mercury column. In defendant's device the mercury and water are separated by a cushion of air, as in Matt and Edgar and Angrich, so that, in case of undue pressure. the air is made to lift the mercury seal. Other minor differences exist, but in the main the devices are otherwise similar, and operate in the same manner.

Defendants insist that their device is structurally and functionally different from complainant's; that complainant avoids blow-outs, while theirs does not: and that it is no concern of complainant's whether their seal permits and provides for the return of air inasmuch as his device is limited to the use of water.

On the hearing, the Circuit Court sustained the patent upon grounds not here in controversy, held that the subject-matter of original claims 2, 3, and 4 was the same as that contended for by complainant on this hearing; that that subject-matter had been abandoned when the claims 2, 3. and 4 were canceled; that they could not be recalled; and dismissed the bill for want of equity, from which decree this appeal is prosecuted, and the entry of which is assigned as error.

Russell Wiles, Philip C. Dyrenforth, and Charles Turner Brown, for appellant.

Leverett C. Wheeler, for appellee.

Before KOHLSAAT and MACK, Circuit Judges, and SANBORN, District Judge.

KOHLSAAT, Circuit Judge (after stating the facts as above). The substance of the claims in suit, so far as here involved is a pressure and relief attachment for use in connection with a hot water heating system, containing the following elements, viz.: (1) A mercury well; (2) a chamber in communication therewith; (3) a tube extending from said mercury well to said chamber to allow the formation of a column of mercury in response to system pressure, and a receptacle enclosing said well, chamber, and tube—all so arranged that water may pass from and return to the system through the mercury.

The original specification seems to have contemplated this combination, but it remained for the examiner to voice it properly. It is defendants' contention that this combination was abandoned when original claims 2, 3, and 4 were canceled in response to the rejection by the examiner. But a study of the language of those claims does not justify this construction. If they were ever intended by the applicant to cover the substance of the claims in suit, they failed of their purpose. The attempt of defendants to read into these three claims the double feature of passing and returning the fluid by reference to the then prior art does not commend itself. Certainly in dealing with the proceedings in the Patent Office the court should not, by any inference, debar an applicant from the reward of his diligence in securing the benefits of his invention. Especially is this the case whenever it appears that the proceedings are not prosecuted with that discrimination and caution which a case involving this well developed art should command. It is not the spirit of the patent statutes to place the procurement of patents on technical grounds, and beyond the reach of ordinarily skillful persons. In rejecting claims 2, 3, and 4 the examiner held that there could be no invention in substituting the Trane seal for the Grove seal. He evidently did not pass upon the question of a high pressure and a low pressure seal in one device and employing but one body of mercury. If anything were wanting to make this conclusive, we may cite his action in suggesting the claims in suit. The court will not assume that the examiner would suggest and give to an applicant a patent for a device which he knew to have been surrendered to the public. It would, in the opinion of the court, be straining both the facts and the law to hold that claims 2, 3, and 4 were identical with those in suit. Every reasonable intendment should prevail in support of the contrary proposition, and we therefore hold that the applicant did not abandon whatever of invention, if any, there is in the claims in suit, when he canceled claims 2, 3, and 4, as originally filed. As before stated, the claims in suit cover an attachment to a hot water heating system, and not a hot water heating system as such. It is evident that it must be treated as an entity, entirely independent of the system. It is a device in no manner dependent upon the character of the system pressure, whereby the mercury column is lifted. That may be water, air, steam, or gas. It applies to any system in which it is desirable to facilitate the relief of

pressure affording an avenue of escape under controlled conditions, and, when atmospheric pressure is restored, facilitate the return of water or air to the system, through the use of mercury seals, effected by the use of a single body of mercury. There is no force in defendant's contention that it should be limited to hot water heating systems, or to a device in which the mercury is directly moved upon by water. Was there any patentable novelty in so combining the concepts of the two lines of devices of the prior art— i. e., those covering the application of a mercury seal to the protection of a hot water, hot air, gas, or steam heating system by permitting the pressure to be relieved by the escape of fluid or other substance when necessary and those which provide for a restoration of the fluids of the system to normal conditions under atmospheric pressure, when required—as to accomplish both results in one device, and with one body of mercury? The Olney patent, above cited, accomplished something like this by the use of two mechanical valves. There is a marked distinction to be drawn between the mercury seal and a mechanical valve: The former never fails to operate; the latter is subject to all the defects of metalworking automatic devices. Rust and friction serve to make the latter uncertain.

The Mott and Edgar patent employs for its release of pressure, a mercury seal, and for its restoration of elements to the system, an automatic mechanical valve. Nowhere in the prior art do we find the combination of the claims in suit. That they call for a combination seems clear from the fact that they, by various skillful and novel adjustments, secure the combined effects of the herein so-called high pressure and low pressure or vacuum safety and restoration devices of the prior art by the use of only one mercury column and the elimination of a number of elements, which would be necessarily present, were the device to constitute an aggregation. The idea of a device which would pass out of the system and then at the proper time return to the system the water or air required to keep it in working order in the condition best accomplishing the end in view is both ingenious, useful, and new—not broadly new, but to a degree which invades the realm of invention, the state of the art considered. The claims in suit are therefore held to be valid.

If the concept of the patent in suit is that of an independent attachment to a system for hot water or steam or hot air heating, and devised only for the purpose of protecting such system, and in and of itself a separate and distinct entity, then the fact that defendants use an air cushion between their water and mercury columns has no bearing upon the subject-matter of this suit.

Thus stripped of everything but the elements which enter into the relief device itself, it is apparent that the defendant's construction is practically the same as that of complainant. It is true that the defendant's mercury well *6* is comparatively small. If, however, it accomplishes the same end as complainant's, and in the same way, the size is not material. The idea of each is identical.

We conclude that the court erred in dismissing the bill for want of equity.

The decree of the Circuit Court is reversed, with directions to proceed further in conformity herewith.